UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PHILIP RUDOLPH JOHNSON, | ) | Case No. 09-2125 SC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION |
| v. | ) | <u>FOR SUMMARY JUDGMENT</u> |
| | ) | |
| AMERICAN CASUALTY COMPANY OF READING PA, a Pennsylvania Corporation, DOES 1-100, | ) ) ) ) | |
| Defendants. | ) ) | |

## I. **INTRODUCTION**

This matter comes before the Court on the Motion for Summary Judgment ("Motion") filed by Defendant American Casualty Company of Reading PA ("Defendant" or "American Casualty"). Docket No. 25. Plaintiff Philip Rudolph Johnson ("Plaintiff" or "Johnson") filed an Opposition. Docket No. 28. Defendant submitted a Reply. Docket No. 30. For the reasons stated herein, the Motion is GRANTED.

## II. **BACKGROUND**

### A. **Factual Background**

The following facts are not in dispute. On April 8, 2005, Plaintiff was involved in a motor vehicle accident that caused him injuries. Am. Compl. ¶ 7. The accident occurred on Highway 50 in El Dorado County in California, when John Ryan ("Ryan") lost

control of the 2002 GMC Sierra he was driving, and collided head-on with Plaintiff's vehicle. Id. ¶ 8.

On March 17, 2007, Johnson sued Ryan seeking damages as a result of the accident in the Superior Court for the County of El Dorado. Id. ¶ 13 (the "tort action"). Ryan tendered his defense to American Casualty, but the insurance company refused to defend or indemnify Ryan. Kardassakis Decl.[1] Ex. 5 ("May 11, 2007 Letter"); Larkin Decl.[2] ¶ 12. American Casualty made a payment in connection with property damage to the 2002 GMC Sierra. Docket No. 24 ("Answer to Am. Compl.") ¶ 10. Johnson and Ryan stipulated to the entry of judgment in favor of Johnson and against Ryan in the amount of $750,000. Kardassakis Decl. Ex. 2 ("Settlement Agreement"). Ryan assigned to Johnson all rights, claims, and causes of action that Ryan had against American Casualty relating to the insurance policy or American Casualty's refusal to defend Ryan. Id. ¶ 2. Ryan carried an automobile liability policy with California State Automobile Association ("CSAA"), with a policy limit of $100,000, which CSAA agreed to pay to Plaintiff following a finding that the settlement was made in good faith. Id. ¶ 3.

**B.  Procedural Background**

On April 7, 2009, Johnson filed suit against American

---

[1] Jon Kardassakis, a partner with Lewis Brisbois Bisgaard & Smith, LLP, counsel for Defendant American Casualty, filed a declaration attesting to the truth and accuracy of Defendant's exhibits. Docket No. 25-3. The exhibits are filed as Docket Nos. 25-4 to 25-8.

[2] Allan ("Chip") Larkin, a Claims Consultant in the Major Case Unit of Continental Casualty Company, filed a declaration in support of Defendant's Motion. Docket No. 25-1.

2

Casualty in the Superior Court for the County of Alameda. See Docket No. 1 ("Notice of Removal") ¶ 1. American Casualty removed the case to this Court. See Notice of Removal. On September 11, 2009, Plaintiff filed an Amended Complaint, which consists of four causes of action: (1) breach of contract; (2) bad faith; (3) direct action against insurance carrier pursuant to Insurance Code section 11580; (4) estoppel, reasonable expectations and waiver. Docket No. 22 ("Am. Compl.") ¶¶ 19-39. Defendant filed an Answer on October 9, 2009. See Answer to Am. Compl. Defendant now moves for summary judgment in its favor as to all causes of action. Mot. at 1.

### III. LEGAL STANDARD

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must not weigh the evidence. Id. at 255. Rather, the nonmoving party's evidence must be believed and "all justifiable inferences are to be drawn in [the nonmovant's] favor." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (quoting Anderson, 477 U.S. at 255). Where the party opposing summary judgment bears the burden of proof on a dispositive issue, it must offer specific evidence demonstrating a factual basis on which it is entitled to

3

relief. Anderson, 477 U.S. at 256. The non-moving party must set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts. Id.

**IV. DISCUSSION**

    **A. The Insurance Contract**

Defendant issued a Business Auto insurance policy, policy number C2074694981 to V&C Construction, Inc. ("V&C Construction"), with a policy period from 8/24/2004 to 8/24/2005. Kardassakis Decl. Ex. 1 ("Policy") at 1. V&C Construction is a Nevada company with an address in Minden, Nevada. Id.; Ohlwiler Decl.[3] ¶ 2. The section entitled "Business Auto Coverage Form" provides that "[w]e will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." Policy at 18. The relevant policy provisions define an insured as "[y]ou for any covered 'auto,'", or "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." Id. The words "you" and "your" refer to the Named Insured. Id. at 17. V&C Construction is the named insured. Id. at 1. An endorsement adds as additional insureds "[a]ny Lessor of a covered 'auto' for which we are providing any coverage for that covered 'auto'" and "Cascade Water Trucks, Inc." Id. at 15.

---

[3] Nancy Ohlwiler, a Construction Underwriting Consultant employed by Continental Casualty Co., filed a declaration in support of Defendant's Motion. Docket No. 25-2.

4

**B. Breach of Contract**

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n. 6 (2004).[4] Johnson contends that American Casualty breached the Policy by refusing to defend and indemnify "permissive driver John Ryan" in the tort action brought by Johnson against Ryan. Am. Compl. ¶¶ 19-22. American Casualty contends it is entitled to summary judgment on Plaintiff's breach-of-contract claim because Ryan was not an insured under the Policy. Mot. at 8-14.

The Court agrees with American Casualty. The Policy provides that American Casualty "will pay all sums an 'insured' legally must pay as damages . . . ." Policy at 18. V&C Construction is the named insured, and insurance coverage extends to "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." Id. at 1, 18. Here, the Court finds that V&C Construction did not own the 2002 GMC Sierra at the time of the accident, and even if it did, V&C Construction did not give Ryan permission to drive the truck.

---

[4] Neither Plaintiff nor Defendant explain whether California or Nevada law applies in this case. The Court notes that the elements for breach of contract are essentially the same under California and Nevada law. Under Nevada law, the plaintiff must demonstrate: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach. Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing Richardson v. Jones, 1 Nev. 405, 405 (1865)).

### 1. Ownership

At one point in time, V&C Construction owned the 2002 GMC Sierra. Kardassakis Decl. Ex. 6 ("Raymond Van Winkle Dep.") at 9:19-21. American Casualty contends that by the time of the accident on April 9, 2005, Claudia Van Winkle owned the 2002 GMC Sierra. Mot. at 11-13. Plaintiff does not explicitly dispute that ownership of the truck transferred to Claudia Van Winkle, but instead contends that V&C Construction's insurance coverage did not terminate with the change in ownership. See Opp'n at 11-15.

The evidence supports American Casualty's contention that Claudia Van Winkle owned the truck at the time of the accident on April 9, 2005. On June 9, 2004, a Nevada court approved the Marital Settlement Agreement between Raymond Van Winkle and Claudia Van Winkle, dated May 12, 2004 and May 20, 2004. Kardassakis Decl. Ex. 3 ("Findings of Fact, Conclusions of Law and Decree of Divorce") at 77. As part of the settlement agreement, the 2002 GMC Sierra was assigned to Claudia Van Winkle. Id. at 97; Raymond Van Winkle Dep. at 9:4-24. When the loan for the truck was paid off by January 5, 2005, and when GMAC sent title to Raymond Van Winkle, he immediately signed title over to Claudia Van Winkle. Raymond Van Winkle Dep. at 13:1-13; Kardassakis Decl. Ex. 7 ("Claudia Van Winkle Dep.") at 12:17-21, 35:3-23. He mailed the executed Certificate of Title to his ex-wife, who received it around January 20, 2005. Raymond Van Winkle Dep. at 13:1-13; Claudia Van Winkle Dep. at 35:1-7. When she received the Certificate of Title, she did not immediately register it with the Nevada Department of Motor Vehicles, see Claudia Van Winkle Dep.

6

at 12:17-13:5, but she was in possession of the truck at that time, see Claudia Van Winkle Dep. at 42:22-24.

Under Nevada law, "'[o]wner' means a person who holds the legal title of a vehicle and whose name appears on the certificate of title . . . ." N.R.S. 482.085. In Bly v. Mid-Century Insurance Company, the Supreme Court of Nevada held that a motorcycle buyer, who received physical possession and control of the motorcycle was the owner of the motorcycle, even though the seller did not execute the certificate of title. 698 P.2d 877, 879 (Nev. 1985). Here, the case for finding that Claudia Van Winkle is the owner of the 2002 GMC Sierra is even stronger because Claudia Van Winkle received the executed Certificate of Title in January 2005. See Raymond Van Winkle Dep. at 13:1-13; Claudia Van Winkle Dep. at 35:1-7. Based on her receipt of the Certificate of Title, the terms of the 2004 marital settlement agreement, and her physical possession of the truck, the Court finds that Claudia Van Winkle owned the 2002 GMC Sierra at the time of the accident on April 8, 2005.

### 2. Permission

Even if ownership had not transferred to Claudia Van Winkle, the Court would still find that there has been no breach of contract. The Policy defines as an insured "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." Policy at 18. Here, there is no evidence that Ryan had the permission of the named insured to drive the truck. It was Claudia Van Winkle who gave Ryan permission to use the vehicle. Claudia Van Winkle Dep. at 6:20-23; Kardassakis Decl. Ex. 8 ("John

7

Ryan Dep.") at 8:19-22, 12:10-11.  Since the time of her separation with Raymond Van Winkle, she had not been doing any work for V&C Construction.  Claudia Van Winkle Dep. at 38:16-22.  Raymond Van Winkle, President of V&C Construction, did not give Ryan permission to drive the 2002 GMC Sierra before the accident.  Raymond Van Winkle Dep. at 13:17-24.  In Nelson v. Planet Insurance Company, the Supreme Court of Nevada held that an insurance company had no obligation to extend coverage to a driver who was not given permission to drive by the named insured.  906 P.2d 703, 706 (Nev. 1995).  Similarly, here, Ryan did not have permission of the named insured to drive the 2002 GMC Sierra.

Plaintiff contends that attempts to limit the scope of permissive user coverage are impermissible under both Nevada and California law.  Opp'n at 16.  The cases cited by Plaintiff do not support this contention.  In United States Fidelity and Guaranty Company v. Fisher, the Supreme Court of Nevada held that:

> if a person is given permission by an insured owner to use a motor vehicle in the first instance, any subsequent use while the vehicle remains in the person's possession is a permissive use within the terms of a standard automobile liability insurance policy.

494 P.2d 549, 552 (Nev. 1972).  In this case, however, Ryan did not have the permission of the named insured, and there is nothing in Fisher to suggest that permissive user coverage extends beyond drivers who have the permission of the named insured.

Similarly, there is nothing in Argonaut Insurance Company v. Colonial Insurance Company, 70 Cal. App. 3d 608 (Ct. App. 1997) to indicate that, under California law, insurance coverage should

8

extend to users who do not have the permission of the named insured. Instead, the California Insurance Code only requires insurance to extend to users who have such permission. See Cal. Ins. Code § 11580.1(b)(4)("[T]o the same extent that insurance is afforded to the named insured, to any other person using the motor vehicle, provided the use is by the named insured or with his or her permission, express or implied, and within the scope of that permission . . . ."). Since there is no evidence that Ryan had the express or implied permission of V&C Construction to drive the 2002 GMC Sierra, the Court finds that American Casualty did not breach the Policy by refusing to defend or indemnify Ryan. The Court GRANTS American Casualty's motion for summary judgment in its favor with respect to Johnson's cause of action for breach of contract.

### C. Bad Faith

Plaintiff alleges that American Casualty breached its obligation of good faith and fair dealing by refusing to defend and indemnify Ryan. Am. Compl. ¶¶ 23-26. Under California law, there are at least two requirements to establish breach of the implied covenant: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1151 (Ct. App. 1990). Here, the Court has already determined that benefits due under the Policy were not withheld because American Casualty had no obligation under the terms of the Policy to defend or indemnify Ryan. Therefore, Plaintiff's cause of action for bad faith fails

9

as a matter of law.  See also Kruse v. Bank of America, 202 Cal. App. 3d 38, 60 (Ct. App. 1988) ("The inherent precondition to such a tort claim is the existence and breach of an enforceable contract.").

Even under Nevada law, tort liability for breach of the implied covenant of good faith and fair dealing is only appropriate where the party in the superior or entrusted position has engaged in grievous or perfidious misconduct." Blanck v. Hager, 360 F. Supp. 2d 1137, 1152 (D. Nev. 2005)(citation omitted).  Here, the Court finds it was reasonable for American Casualty to refuse to defend or indemnify Ryan because he was not driving the truck with the permission of the named insured, V&C Construction.  The Court GRANTS summary judgment in favor of American Casualty on Plaintiff's bad faith cause of action.

### D. **Action under California Insurance Code Section 11580**

In his Opposition, Plaintiff concedes that the Policy was not issued or delivered in California, and that American Casualty is entitled to summary judgment on Plaintiff's claim asserted in Count Three of the Amended Complaint.  Opp'n at 22-23. Accordingly, the Court GRANTS summary judgment in favor of American Casualty with respect to this cause of action.

### E. **Estoppel, Reasonable Expectations, and Waiver**

Plaintiff's final cause of action alleges that "American Casualty is estopped from contesting coverage for the damages caused by its "permissive insured John Ryan," Am. Compl. ¶ 38, and that the "actions and conduct of American Casualty and its direct agent Ms. Ferguson, actions which include but are not limited to

10

the continued acceptance of premium, the lack of return of premium, constitute a waiver of any contention that the 2002 GMC Sierra was not insured under the policy issued and sold by American Casualty and agent Ferguson," id. ¶ 39.[5]

### 1. Estoppel

Under California law, "fraud or misrepresentation as to coverage under a policy or issuance of a policy different in coverage from that represented to the insured estops the insurer from reliance on the coverage as stated in the issued policy." Hartford Fire Ins. Co. v. Spartan Realty Int'l, Inc., 196 Cal. App. 3d 1320, 1325 (Ct. App. 1987).

Here, the Court finds no evidence that American Casualty or its direct agent Janie Ferguson ("Ferguson") misrepresented the coverage under the Policy. When Claudia Van Winkle received the Certificate of Title for the 2002 GMC Sierra from her ex-husband, she called Ferguson, who told her the truck was still insured under the V&C Construction Policy. Claudia testified that "I called Janie. Janie said he [Raymond Van Winkle] didn't cancel the insurance, so I said, well, then he is fulfilling his obligation of insurance through September." Claudia Van Winkle Dep. at 12:19-21. Claudia Van Winkle testified that Ferguson "said Ray hadn't cancelled the insurance, and I said if he cancels it, flip it to my private policy." Id. at 15:2-3. At the time of the accident, Claudia Van Winkle's understanding was that the

---

[5] There is no separate cause of action for reasonable expectations; instead the allegations regarding reasonable expectations appear to be part of Plaintiff's estoppel claim. See Am. Comp. ¶¶ 33-38.

11

1  truck was still insured through V&C Construction.  Id. at 11:19-
2  21.
3      Ferguson's notes from her January 13, 2005 telephone
4  conversation with Claudia Van Winkle state:

> Claudia called to ask about adding '02 Chevy pickup to personal policy.  Started to add, but said she wasn't going to register until the registration was due to renew.  She said according to divorce papers V&C would keep insured and register through September.  Told her we can't add to her personal policy until it's registered to her.  Told her to let me know when she was ready to reregister.

Kardassakis Decl. Ex. 9 ("Ferguson Dep. I") at 32:23-33:4.  At that time, Ferguson's understanding was that Claudia did not have ownership of the truck, and Ferguson told Claudia that "she had to have ownership or insurable interest in the vehicle before we could add it [to her personal policy]."  Id. at 104:7-21.

In the Opposition brief, Plaintiff states that Ferguson "represented to Ms. Van Winkle that the insurance from American Casualty would provide coverage even though Ms. Van Winkle was taking possession of the vehicle from V&C Construction."  Opp'n at 11.  Plaintiff also alleges that American Casualty's agent made "assurances . . . that the coverage was in place under the American Casualty policy."  Id. at 15.  Plaintiff seems to be implying that Ferguson misrepresented who would be covered under the V&C Construction Policy.  However, Plaintiff does not cite any evidence to support this allegation.  See Fed. R. Civ. P. 56(e)(2)("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must -- by

12

affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.")

Instead, the evidence from both the depositions of Claudia Van Winkle and Ferguson indicates that when Claudia Van Winkle called Ferguson in January 2005, Ferguson confirmed that the 2002 GMC Sierra was still insured under the V&C Construction Policy, and Ferguson advised Claudia Van Winkle that the truck could not be added to her personal policy until she registered it in her name. See Claudia Van Winkle Dep. at 12:17-21; Ferguson Dep. I at 32:23-33:4. There is simply no evidence that Ferguson misrepresented to Claudia Van Winkle the coverage available under the Policy. Furthermore, "estoppel requires proof of the insured's detrimental reliance." Waller, 11 Cal. 4th at 33. Here, there is no evidence that the insured, V&C Construction, detrimentally relied on any misrepresentation of American Casualty or its agent.

In his Opposition, Plaintiff relies on Fanucci v. Allstate Insurance Company, 638 F. Supp. 2d 1125 (N.D. Cal. 2009). Opp'n at 10-11. This reliance is misplaced. In Fanucci, the Court rejected Allstate's motion for summary judgment with regard to an estoppel theory because the insured, Mr. Fanucci, filed a declaration stating that the insurer's agent had misrepresented to him that an umbrella policy would provide uninsured motorist coverage. Id. at 1131. Here, there is no declaration from Claudia Van Winkle stating that Ferguson misrepresented the nature of the insurance coverage that applied to the 2002 GMC Sierra. Instead, the deposition testimony indicates that Ferguson merely

13

confirmed that the truck was insured under the V&C Construction Policy, and that Claudia Van Winkle would have to register it in her own name before it could be added to her personal policy. See Claudia Van Winkle Dep. at 12:17-21; Ferguson Dep. I at 32:23-33:4. There is no evidence of any misrepresentation by Ferguson to Claudia Van Winkle regarding the coverage available under the Policy. See Watson v. U. S. Fidelity & Guaranty Co., 427 F.2d 1355, 1357 (9th Cir. 1970)(no equitable estoppel where "[d]efendant did not misrepresent the nature of the coverage under the policy").[6] The Court concludes that American Casualty is entitled to summary judgment in its favor on Plaintiff's estoppel claim.

**2. Waiver**

"Case law is clear that '[w]aiver is the intentional relinquishment of a known right after knowledge of the facts.' . . . The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver'". Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 32 (1995)(citations omitted).

Here, there is no evidence to support Plaintiff's contention that American Casualty intentionally relinquished its right to

---

[6] Plaintiff relies on California law only when discussing his estoppel claim, see Opp'n at 10-11. The Court notes that the doctrine of equitable estoppel consists of the same elements in California and Nevada. Compare Southern California Edison Co. v. Public Utilities Comm'n, 85 Cal. App. 4th 1086, 1110 (Ct. App. 2000) with Breliant v. Preferred Equities Corp., 918 P.2d 314, 321 (Nev. 1996); see also Schneider v. Continental Assur. Co., 885 P.2d 572, 574 (Nev. 1994).

14

refuse to defend or indemnify a driver of the 2002 GMC Sierra not covered by the Policy. As explained above, there is no evidence to support the allegation that Ferguson misrepresented to Claudia Van Winkle who was covered under the V&C Construction Policy. After the accident, Ferguson filed a claim report with American Casualty. Burke Decl.[7] Ex. 1 ("Ferguson Dep. II") at 40:9-16. American Casualty paid for damage to the vehicle, id. at 68:5-10, but refused to defend Ryan in the personal injury suit filed by Johnson, see May 11, 2007 Letter. Plaintiff also alleges that American Casualty accepted insurance premiums, and did not return them. Am. Compl. ¶ 38. Plaintiff has not cited any authority showing that, by engaging in these actions, American Casualty intentionally relinquished its right to refuse to defend or indemnify a driver not covered by the Policy.

Plaintiff relies on Vigoren v. Transnational Insurance Company, 482 P.2d 96 (Nev. 1970). Opp'n at 14-15. The Court finds that the case is distinguishable. In Vigoren, the Supreme Court of Nevada found that there were genuine issues of material fact bearing upon waiver because the insured driver asserted that he fully advised the insurance agent that he had conditionally sold the car at the time he reinstated his policy. 482 P.2d at 97. The court held that the insurance company "may not rely upon the change of beneficial ownership of the car to defeat coverage if it had knowledge of the conditional sale when it elected to reinstate

---

[7] Thomas P. Burke, attorney for Plaintiff, filed a declaration attesting to the accuracy of the exhibit filed in support of Plaintiff's Opposition. Docket No. 28-3. The exhibit is filed as Docket No. 28-2.

15

the policy and receive a premium therefor." Id.  Here, there is no evidence that Claudia Van Winkle told Ferguson that title to the truck had been transferred to her when she called Ferguson in January 2005.  Ferguson Dep. I at 104:5-105:7.  Ferguson merely confirmed that the truck remained insured under the V&C Policy. Id. at 32:23-33:4.  Unlike in Vigoren, there is no dispute here regarding a material fact bearing upon waiver.  The Court concludes that American Casualty is entitled to summary judgment in its favor on Plaintiff's waiver claim.

**V.  CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: January 5, 2010

_____
UNITED STATES DISTRICT JUDGE